RECEIVED
IN MONROE, LA
JUL 24 2008
ROBERT H. SHEMWELL, CLERK
WESTERN DISTRICT OF LOUISIANA

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| FREDDIE C. GADDIS | CIVIL ACTION NO. 06-2377 |
| VERSUS | JUDGE ROBERT G. JAMES |
| UNITED STATES OF AMERICA | MAG. JUDGE KAREN L. HAYES |

## OPINION

Plaintiff Freddie Gaddis ("Gaddis") brought this action under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq., against the United States of America.

A bench trial was held in this matter on July 8, 2008.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

The Court hereby enters the following findings of fact and conclusions of law. To the extent that any finding of fact constitutes a conclusion of law, the Court hereby adopts it as such, and to the extent that any conclusion of law constitutes a finding of fact, the Court hereby adopts it as such.

**A.    FINDINGS OF FACT**

**1.    Background**

Gaddis brought suit under the FTCA contending that the doctors and staff at the Pain Management Program at the Overton Brooks VA Medical Center in Shreveport, Louisiana ("VA") breached a standard of care in treating his pain from fibromylagia.

Gaddis is a veteran now in his fifties who was discharged from service in 1975. In 1980, Gaddis was diagnosed with fibromylagia. Eventually the pain from his fibromylagia was

debilitating and he stopped working around 1990. In the early to late 1990s, Gaddis started receiving treatment for his fibromylagia from Saber Kheirella, M.D. at the Louisiana State Medical Center in Monroe.

In August, 2003, Gaddis was referred to the VA to manage the widespread muscular pain associated with his fibromylagia. The following month, on September 19, 2003, Gaddis enrolled in the VA's Pain Clinic, where he was prescribed methadone. From 2003 through 2004, Ngoc Xuan Nguyen, M.D., Pushpita Pramanik, M.D., and Karen Munn, R.N., treated Gaddis at the Pain Clinic.

### 2. Methadone Treatment

#### a. Intake Interview

At his August 2003 intake interview at the VA, Gaddis told Nurse Munn that he had abused cocaine in the past and had pending disability actions related to his pain and fibromylagia. Gaddis carried a cane at the interview, but did not use it for stability or weight bearing. He sat comfortably in the chair during the interview and did not appear to be in any distress or discomfort even though he carried a large briefcase. Nonetheless, the VA's Pain Team recommended that he be admitted to the Pain Clinic, and an appointment was scheduled for September 2003.

#### b. Methadone adequate for Gaddis's pain

On September 19, 2003, Gaddis was evaluated by Dr. Pramanik and prescribed methadone 5mg. Gaddis was given a thirty-day prescription and was scheduled for a follow-up appointment. At the end of each month before his follow-up appointment, the VA would mail Gaddis a refill of his prescription if he called the VA, reported his pain level, and requested a

refill.

On October 16, Gaddis called the VA for a refill and was mailed a thirty-day supply three days later.

On November 7, 2003, Gaddis was seen by Dr. Pramanik at the VA and his prescription was renewed. Gaddis brought a cane to the visit, but again he did not use it for support and was able to carry a large, heavy briefcase without noted difficulty. On January 6, 2004, Gaddis called the VA to renew his methadone prescription. At that time, Gaddis had acceptable pain control from the methadone and no new complaints of pain or discomfort. A thirty-day supply of methadone was taken to the pharmacy to be mailed to Gaddis that day.

On February 4, 2004, Gaddis missed an appointment at the VA, so his appointment was rescheduled for February 11. Gaddis tested negative for methadone at the February 11 appointment. Despite being without methadone, Gaddis was not experiencing withdrawal symptoms.[1] Gaddis's methadone prescription was renewed at this appointment.

On March 4, 2004, Gaddis called the VA for a refill of his medication. His pain was still manageable with his methadone prescription, so a refill was mailed to him on March 10, 2004.

### c. VA declines to increase Gaddis's methadone

On March 31, 2004, Gaddis was seen by his primary care physician, Dr. Kheiralla, at the

---

[1] In the pretrial order Gaddis alleged that he experienced withdrawal symptoms after missing his February 4 appointment. However, neither his testimony at trial, nor the medical evidence supports such an allegation. At trial Gaddis testified that after missing his February appointment he called and received a methadone prescription to last him until his rescheduled appointment. The medical evidence, however, indicates that he did not call for methadone, but instead went to an emergency room to receive injections to relieve his pain. In either case there was no evidence that Gaddis experienced withdrawal symptoms in February.

3

LSU Medical Center. Gaddis told Dr. Kheiralla that his pain was not being controlled by the methadone. Gaddis also told Dr. Kheiralla that because his methadone was inadequate he was periodically visiting the emergency room at the St. Francis Medical Center in Monroe for steroid injections. Dr. Kheiralla informed Dr. Nguyen about Gaddis's complaints and the steroid injections, but noted that Gaddis might have a steroid dependence.

After receiving Dr. Kheiralla's report, Dr. Nguyen determined that Gaddis would need an appointment at the VA before his methadone prescription could be increased. The appointment was necessary because Dr. Nguyen needed to run a test on Gaddis to determine whether he could safely take more methadone. An appointment was scheduled for May 3, 2004. In the meantime, Gaddis was sent his usual 5mg prescription of methadone on April 11, 2004.

### d. Gaddis runs out of methadone

On May 3, 2004, Gaddis missed his appointment at the VA, and his appointment was rescheduled at Gaddis's request for May 17, 2004. The May 17, 2004, appointment was later cancelled because there was no doctor in the clinic to examine Gaddis and was rescheduled for June 2. Sometime between the appointments on May 3 and June 2, Gaddis ran out of methadone and testified that he began experiencing withdrawal symptoms that included convulsions, stomach cramping, and suicidal ideation. Gaddis called the clinic to report his symptoms of withdrawal, but a recorded message instructed him to go to the emergency room if his situation was an emergency. Accordingly, Gaddis went to the emergency room at the Louisiana State University Medical Center in Monroe where he received a muscle relaxant and a prescription for

4

the pain reliever Lortab, which lasted him until his June 2 appointment.[2]

### e. Methadone treatment ended and Gaddis discharged from the VA

At the June 2 appointment, Dr. Nguyen concluded that the Lortab prescription was more appropriate than the methadone for Gaddis's pain. Therefore, Gaddis's methadone treatment was discontinued and he was issued a prescription for Lortab that was supposed to last for six months. Gaddis had no relevant interactions with the clinic again until November.

On November 10, 2004, Gaddis called the VA for a refill of his Lortab prescription and an appointment was scheduled for November 24, 2004. At the November appointment, Gaddis tested positive for cocaine, so Dr. Nguyen declined to evaluate him. Nurse Munn explained to Gaddis that the positive test for cocaine precluded him from re-enrolling in the pain management program.

At a December 2, 2004, meeting, the VA's pain management team officially determined that Gaddis was not eligible to re-enroll in the VA's pain management program for ninety days. The following day, on December 3, 2004, Nurse Munn warned Gaddis about taking narcotics with street drugs and told him that he would need to seek re-enrollment in the pain management program in ninety days or continue seeking treatment from his primary care provider.

## B. CONCLUSIONS OF LAW

Gaddis has argued that the VA, through its employees and agents, was negligent and failed to meet the appropriate standard of care when treating his pain. Specifically, Gaddis has

---

[2] Lortab is a brand name for the combination of the pain relievers acetaminophen and hydrocodone. Drugs.com: Drug Information Online, http://www.drugs.com/lortab.html

5

alleged that the VA breached a standard of care when it failed to increase his methadone, allowed his methadone to lapse, and terminated his methadone treatment.

### 1. Jurisdiction

The United States, as a sovereign, is immune from suit, except when it consents to be sued. United States v. Mitchell, 463 U.S. 206 (1983). FTCA, 28 U.S.C. § 2671, et seq., is a limited waiver of sovereign immunity that allows for recovery from the United States for injury caused by the negligent or wrongful acts or omissions of an employee of the Government while acting within the scope of his office or employment. United States v. Orleans, 425 U.S. 807, 813 (1976); Laird v. Nelms, 406 U. S. 797, 802-807 (1972), reh'g denied, 409 U.S. 902 (1972); Tindall v. Tindall, 901 F.2d 53 (5th Cir. 1990).

### 2. Applicable Law

Under the FTCA, 28 U.S.C. § 2671, et seq., liability is determined, "in accordance with the law of the place where the act or omissions occurred." 28 U.S.C. § 2674; Hatahley v. United States, 351 U.S. 173 (1956); Tindall, 901 F.2d at 54. Thus, under the FTCA, Louisiana law controls the issue of liability in this case.

### 3. Standard of Care

Malpractice claims against a hospital and its doctors are subject to the general rules of proof applicable to any negligence action. Henderson v. Homer Mem'l Hosp., 40,585, p.10 (La. App. 2 Cir. 1/27/06); 920 So. 2d 988, 994; Boudreaux v. Mid-Continent Cas. Co., 05-2453, p.6 (La. App. 1 Cir. 11/3/06); 950 So. 2d 839, 844, writ denied, 06-2775 (La. 1/26/07); 948 So. 2d 171. Therefore, Gaddis has the burden of proving the applicable standard of care, the breach of the standard of care, and the causal connection between the breach and the resulting injuries. La.

Rev. Stat. § 9:279C; Henderson, 920 So. 2d at 994 (citing Robertson v. West Carroll Ambulance Serv. Dist., 39,331 (La. App. 2 Cir. 1/26/05), 892 So.2d 772, writ denied, 2005-0460 (La. 4/22/05), 899 So. 2d 577).

Opinions from medical experts, who are members of the medical profession, are necessary in medical malpractice actions to determine whether the defendant (1) possessed the requisite degree of skill or knowledge; or (2) failed to exercise reasonable care and diligence. Martin v. East Jefferson Gen. Hosp., 582 So. 2d 1272 (La. 1991); Lee v. Wall, 31,468, 31,469, p. 4 (La App. 2 Cir. 1/20/99); 726 So. 2d 1044, 1046. The plaintiff, however, need not present expert evidence in those rare cases where a lay person could infer negligence from the defendant's obvious carelessness. See Boudreaux, 950 So.2d at 844. For example, expert evidence is not necessary when the defendant has amputated the wrong appendage, dropped a knife, scalpel, or acid on a patient, left a sponge in the patient's body, or failed to attend a patient when the circumstances demonstrate the serious consequences of this failure. Pfiffner v. Correa, 94-0924, 94-0963, 94-0992 (La. 10/17/94), 643 So.2d 1228, 1233-34.

Gaddis presented no expert testimony at trial.

There was no expert evidence that the VA and its doctors breached a standard of care when they declined to increase Gaddis's methadone in April 2004. On the contrary, Dr. Nguyen testified that he declined to increase Gaddis's methadone because it would be dangerous to increase methadone without first testing Gaddis at the clinic to ensure the increased dosage would not be toxic. The Court concludes that the VA and its staff did not breach a standard of care when they declined to increase Gaddis's methadone.

There is also no expert testimony that the VA and its doctors breached a standard of care

7

when Gaddis's methadone prescription lapsed in May 2004. Without expert testimony this Court cannot determine what procedures a pain clinic should implement to ensure that a patient has sufficient medication when he misses appointments, fails to update the clinic about his problems, and seeks treatment at other facilities. In May 2004, Gaddis had an opportunity to discuss renewing his methadone prescription before it ran out, but he missed the appointment. After missing his appointment Gaddis never requested additional medication from the VA. Instead, Gaddis visited the emergency room at LSU Medical Center where he received a muscle relaxant and was prescribed Lortab. The Court concludes that Gaddis has not proven that the VA breached any standard of care with reference to the lapse of the methadone prescription.

Finally, there was no testimony that the VA or its staff breached a standard of care when they replaced Gaddis's methadone with Lortab in June 2004. Selecting the appropriate medication for a patient and determining whether the patient's pain is managed effectively with a particular drug is clearly a decision that requires medical expertise. Dr. Nguyen concluded that the decision to replace the methadone treatment with Lortab was an appropriate decision under the circumstances. Gaddis offered no expert testimony to the contrary. Accordingly the Court concludes that Gaddis has not proven that the VA breached any standard of care when it replaced the methadone medication with Lortab.

To prevail on his claims Gaddis was required to present expert testimony that the VA or its staff breached a standard of care. There is no expert testimony that the VA or its staff breached a standard of care.

## CONCLUSION

For the foregoing reasons, the Court finds in favor of the United States and against

Gaddis.

MONROE, LOUISIANA, this __24__ day of __July__, 2008.

_____
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE